IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

PAULETTE ALLEN,                          §
                                         §
          Plaintiff,                     §
                                         §
v.                                       §          CIVIL NO. H-09-652
                                         §
MICHAEL J. ASTRUE,                       §
COMMISSIONER OF THE                      §
SOCIAL SECURITY ADMINISTRATION,          §
                                         §
          Defendant.                     §

**MEMORANDUM OPINION**

Pending before the court[1] are Plaintiff's Motion for Summary Judgment (Docket Entry No. 16) and Defendant's Motion for Summary Judgment (Docket Entry No. 18).  The court has considered the motions, all relevant filings, and the applicable law.  For the reasons set forth below, the court **GRANTS** Defendant's Motion for Summary Judgment and **DENIES** Plaintiff's Motion for Summary Judgment.

I.  **Case Background**

Plaintiff Paulette Allen ("Plaintiff") filed this action pursuant to 42 U.S.C. § 405(g) for judicial review of an unfavorable decision by the Commissioner of the Social Security Administration ("Defendant" or "Commissioner") regarding Plaintiff's claim for disability insurance benefits under Title II

---

[1]     The parties consented to proceed before the undersigned magistrate judge for all proceedings, including trial and final judgment, pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73.  Docket Entry Nos. 10, 12-13.

and supplemental security income benefits under Title XVI of the Social Security Act ("the Act").

## A.  <u>Procedural History</u>

Plaintiff filed for disability benefits on June 21, 2005, alleging that her disability began on April 15, 2005.[2]  After Plaintiff's application was denied at the initial[3] and reconsideration levels,[4] she requested a hearing before an Administrative Law Judge of the Social Security Administration ("ALJ").[5]  The ALJ granted Plaintiff's request and conducted a hearing in Houston, Texas, on November 20, 2007.[6]  After listening to testimony presented at the hearing and reviewing the medical record, the ALJ issued an unfavorable decision on January 10, 2008.[7]

On December 23, 2008, the Appeals Council denied Plaintiff's request for review, thereby making the ALJ's decision the final decision of the Defendant.[8]  Having exhausted her administrative

---

[2]    Transcript of the Administrative Proceedings ("Tr.") 77.

[3]    Tr. 65.

[4]    Tr. 55.

[5]    Tr. 53.

[6]    Tr. 23.

[7]    Tr. 31.

[8]    Tr. 5.

remedies,[9] Plaintiff filed this timely civil action pursuant to 42 U.S.C. § 405(g) for judicial review of the Defendant's unfavorable decision.

**B.    Factual History**

**1.    Plaintiff's Age, Education, and Work Experience**

Plaintiff was born on March 7, 1955, and was fifty-two years old at the time of the hearing before the ALJ.[10]  She has a twelfth grade education and a trade school certificate from the Academy of Health Care Professions for Medical Billing and Coding.[11]  Prior to the onset of her alleged disability, Plaintiff worked answering telephones for customer service and in other miscellaneous capacities and, before that, doing medical billing and coding.[12]

**2.    Plaintiff's Testimony**

At the hearing on November 20, 2007, Plaintiff testified that she had high blood pressure and frequently had chest pains, shortness of breath, migraine headaches, fatigue, and dizzy spells.[13]  Her dizzy spells occurred irregularly, as frequently as

---

[9]    See Harper v. Bowen, 813 F.2d 737, 739 (5th Cir. 1987), for a summary of the administrative steps a disability claimant must take in order to exhaust her administrative remedies.

[10]    Tr. 80, 700.

[11]    Tr. 702.

[12]    Tr. 701-04.

[13]    Tr. 704, 709.

biweekly and as little as once a month.[14]   She testified that she could not do her past work answering a telephone because she got short of breath and had chest pains several times a week.[15]   She took Nitrostat for the chest pains, but the medicine caused migraine headaches which lasted for at least two hours each time she took the Nitrostat.[16]   She stated that she had no mental problems and did not take medication for depression or anxiety.[17]

Plaintiff's daily activities included washing dishes and making her bed but no other household chores.[18]   She also attended church weekly and read the Bible.[19]   Furthermore, she often visited with a number of friends and family members, in person or over the telephone.[20]   She could not climb steps and could not walk long distances.[21]   She used a non-prescription cane to help her walk because of osteoarthritis in her left knee.[22]   She did not work or have any source of income; she did not babysit her sister's children; and she did not go shopping, drive, use a computer, read

---

[14]   Tr. 718.

[15]   Tr. 714.

[16]   Tr. 714, 717, 720.

[17]   Tr. 704-05.

[18]   Tr. 708.

[19]   Tr. 709-10.

[20]   Tr. 710-11.

[21]   Tr. 719.

[22]   Tr. 719.

anything other than the Bible, or have any hobbies or interests.[23]

### 3.   Plaintiff's Medical Record

On April 11, 2005, Plaintiff presented herself for emergency treatment for syncope/dizziness, chest pain, and headaches; testing at that time revealed no serious abnormalities and Plaintiff was discharged.[24] In May 2005, she was admitted for stent placement due to acute myocardial infarction.[25]   The next week, she again presented herself for treatment with symptoms of chest pain; testing at that time revealed that she had complete occlusion within the proximal stent, which was successfully cleared with angioplasty.[26]

After Plaintiff initially applied for benefits in June 2005, the Commissioner sought a consultative examination with Stanley J. Zimmerman, M.D. ("Zimmerman"), which took place on August 17, 2005.[27]  Zimmerman observed that Plaintiff's x-rays showed normal lungs and that her heart examination revealed no cardiac abnormalities.[28]   Zimmerman also noted that Plaintiff's blood pressure was 150/90 sitting and 160/90 standing; that she was 66.5

---

[23]     Tr. 700-01, 708-10.

[24]     Tr. 170-234.

[25]     Tr. 316-18.

[26]     Tr. 268-69, 350.

[27]     Tr. 414-417.

[28]     Tr. 415, 417.  Plaintiff had regular sinus rhythm and no murmurs or enlargement of the heart.  Id.

inches tall and weighed 248.5 pounds; that she had full range of motion in her extremities, good bilateral grip, and normal gait; and that her back showed no evidence of spasm or tenderness.[29] Zimmerman also reported that Plaintiff's dizzy spells were probably caused by benign positional vertigo.[30]  At a separate examination that also took place in August 2005, radiography testing confirmed that Plaintiff had osteoarthritis in her left knee.[31]

From May 2005 through the end of 2006, Plaintiff required no significant treatment and was not hospitalized for any extended period.[32]  An ECG study in September 2006 revealed no cardiac abnormalities.[33] On April 4, 2007, Plaintiff's medical record shows a complaint of shortness of breath.[34]  Plaintiff also reported having smoked one-and-a-half packs of cigarettes a day for thirty years until April 2005, but, as of April 2007, she continued to smoke only one cigarette a day.[35]

Treatment notes in July and October 2007 by her primary care physician indicated that Plaintiff was feeling well with no

---

[29]    Tr. 415.

[30]    Tr. 415.

[31]    Tr. 236, 415.

[32]    Tr. 137-39, 141-55, 183, 186, 190-92, 203-04, 236-37, 240-42, 259-61, 430-34, 439-44, 458-60, 462.

[33]    Tr. 462.

[34]    Tr. 395-96, 505.

[35]    Tr. 414.

complaints.[36]    In  September  2007,  however,  Plaintiff  sought
emergency  treatment  due  to  chest  pain,  although  testing  at  that
time  revealed  no  serious  abnormalities.[37]

### 4.   Vocational Expert Testimony

After  reviewing  the  file  and  listening  to  Plaintiff's
testimony, the vocational expert ("VE"), Herman Litt, testified that
Plaintiff had spent most of the relevant period in her life working
as a customer service clerk for the city government, as an answering
service  operator  for  various  employers,  and  as  a  medical
coder/biller, all of which jobs were semi-skilled and sedentary.[38]

The ALJ asked the VE to assess the vocational ability of an
individual  closely  approaching  advanced  age  with  the  following
limitations and/or abilities: a twelfth-grade education and a trade
school  certificate;  an  exertional  ability  to  occasionally  lift
twenty pounds and frequently life ten pounds; an ability to walk
four  out  of  eight  hours  with  a  sit/stand  option;  an  unlimited
ability to pull and push; an unlimited ability in gross and fine
movements;  no  stairs,  ladders,  ropes,  scaffolds,  or  running;  an
occasional ability to bend, stoop, squat, crouch, crawl, and twist;
no heavy or dangerous machinery; no heights, uneven surfaces, or
situations  involving  balance;  limited  exposure  to  dust,  fumes,

---

[36]    Tr. 497-98, 546-47.

[37]    Tr. 511, 523.

[38]    Tr. 724.

gases, and chemicals; an ability to get along with others and understand instructions; and an ability to concentrate and perform detailed tasks and respond and adapt to workplace changes and supervision.[39]

The VE responded that the customer service job could potentially have the sit/stand option, although Plaintiff's other former jobs would require her to be seated throughout the day.[40] The VE stated that Plaintiff possessed transferable skills, such as her basic clerical skills, telephone answering skills, medical billing/coding knowledge, and working with the public.[41]   The VE suggested three light jobs that a person with those limitations and skills could perform: (1) information clerk, with 1,000 regional and 160,000 national jobs; (2) file clerk, with 1,500 regional and 210,000 national jobs; and (3) unit clerk, with 1,200 regional and 190,000 national jobs.[42]

The ALJ asked the VE to assess the vocational ability of an individual with the same limitations except with a reduced exertional ability to lift only ten pounds occasionally and five pounds frequently.[43]   The VE responded that, consistent with the

---

[39]   Tr. 725.

[40]   Tr. 725.

[41]   Tr. 726.

[42]   Tr. 726-27.

[43]   Tr. 727.

sit/stand requirement, Plaintiff would have no transferable skills at the sedentary level.[44] He did suggest three jobs that a person with those requirements and limitations could perform: (1) surveillance monitor, with 800 regional and 140,000 national jobs; (2) cashier, with 1,200 regional and 240,000 national jobs; and order clerk, with 1,100 regional and 185,000 national jobs.[45]

Plaintiff next questioned the VE about several hypothetical individuals: (1) a person with up to three migraine headaches per month, causing up to four hours of lost work each time a headache occurred; (2) a person who would have to rest for two hours daily because of the side effects of medication, preventing the individual from completing tasks in a timely manner; and (3) a person who could not maintain attention to complete a task in a timely manner.[46] The VE responded that none of those individuals could maintain employment.[47]

## II.  Legal Standards

### A.  Standard of Review

This court's review of a final decision by the Commissioner denying disability benefits is limited to determining (1) whether substantial record evidence supports the decision and (2) whether

---

[44]     Tr. 31.

[45]     Tr. 729.

[46]     Tr. 730, 732.

[47]     Tr. 730, 732.

9

the ALJ applied proper legal standards in evaluating the evidence. <u>Brown v. Apfel</u>, 192 F.3d 492, 496 (5th Cir. 1999).

If the findings of fact contained in the Commissioner's decision are supported by substantial evidence, they are conclusive, and this court must affirm. <u>Selders v. Sullivan</u>, 914 F.2d 614, 617 (5th Cir. 1990). Substantial evidence is described as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion,'" <u>Greenspan v. Shalala</u>, 38 F.3d 232, 236 (5th Cir. 1994) (citing <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971)); it is "more than a mere scintilla, and less than a preponderance." <u>Spellman v. Shalala</u>, 1 F.3d 357, 360 (5th Cir. 1993). A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision. <u>Johnson v. Bowen</u>, 864 F.2d 340, 343-44 (5th Cir. 1988). Under this standard, the court must review the entire record but may not reweigh the record evidence, determine the issues de novo, or substitute its judgment for that of the Commissioner. <u>Brown</u>, 192 F.3d at 496.

**B.   <u>Standard to Determine Disability</u>**

To obtain disability benefits, a claimant bears the ultimate burden of proving she is disabled within the meaning of the Act. <u>Wren v. Sullivan</u>, 925 F.2d 123, 125 (5th Cir. 1991). Specifically, under the legal standard for determining disability, the claimant must prove she is unable "to engage in any substantial gainful

activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can expect to last for a continuous period of not less than twelve months."  42 U.S.C. § 423(d)(1)(a); see also Greenspan, 38 F.3d at 236.  The existence of such disability must be demonstrated by "medically acceptable clinical and laboratory diagnostic findings."  42 U.S.C. §§ 423(d)(3), (d)(5); see also Jones v. Heckler, 702 F.2d 616, 620 (5th Cir. 1983).

To determine whether a claimant is disabled under this standard, Social Security Act regulations ("regulations") provide that a disability claim should be evaluated according to a sequential five-step process:

> (1) An individual who is working and engaging in substantial gainful activity will not be found disabled regardless of medical findings.

> (2) An individual who does not have a "severe impairment" will not be found to be disabled.

> (3) An individual who meets or equals an impairment listed in the regulations ("Listing")[48] will be considered disabled without the consideration of vocational factors.

> (4) If an individual is capable of performing the work he has done in the past, a finding of "not disabled" will be made.

> (5) If an individual's impairment precludes him from performing his past work, other factors including age, education, past work experience, and residual functional capacity ("RFC") must be considered to determine if other work can be performed.

---

[48]    "Listing" refers to impairments listed in Appendix 1 of the Act's regulations.  20 C.F.R. Pt. 404, Subpt. P, App. 1.

<u>Bowling v. Shalala</u>, 36 F.3d 431, 435 (5th Cir. 1994); <u>see also</u> 20 C.F.R. § 404.1520.   The claimant bears the burden of proof on the first four steps of the inquiry, while the Commissioner bears it on the fifth.   <u>Crowley v. Apfel</u>, 197 F.3d 194, 198 (5th Cir. 1999); <u>Brown</u>, 192 F.3d at 498.   The Commissioner can satisfy this burden either by reliance on the Medical-Vocational Guidelines of the regulations or by expert vocational testimony or other similar evidence.   <u>Fraga v. Bowen</u>, 810 F.2d 1296, 1304 (5th Cir. 1987).   If the Commissioner satisfies his step-five burden of proof, the burden shifts back to the claimant to prove she cannot perform the work suggested.   <u>Muse v. Sullivan</u>, 925 F.2d 785, 789 (5th Cir. 1991). The analysis stops at any point in the process upon a conclusive finding that the claimant is disabled or not disabled.   <u>Greenspan</u>, 38 F.3d at 236.

### III.   <u>Analysis</u>

**A.   <u>The ALJ's Decision</u>**

In his formal decision, the ALJ first noted that Plaintiff had met the disability insured status requirement of the Act from the alleged onset date of disability through December 31, 2008.[49]   The ALJ then followed the five-step process outlined in the regulations, finding at the first step that Plaintiff had not engaged in substantial gainful activity since April 15, 2005, the alleged onset

---

[49]      Tr. 23, 25.

12

date.[50]   At step two, the ALJ found that Plaintiff suffered from
seven severe impairments: (1) coronary artery disease, (2)
hypertension, (3) osteoarthritis, (4) headaches, (5) chronic
bronchitis, (6) obesity, and (7) history of depression.[51]   However,
at step three, the ALJ concluded that none of her impairments were
sufficiently severe to meet or medically equal any of the Listings
and, therefore, that she was not presumptively disabled under the
Act.[52]

     The ALJ then took into consideration the information contained
in Plaintiff's medical records, as well as the testimony presented
at the hearing, and concluded at step four that Plaintiff retained
an RFC to lift/carry ten pounds frequently and twenty pounds
occasionally with a sit/stand option; to walk four of eight hours;
to perform without limitation push/pull activities and gross/fine
manipulations; to occasionally bend, stoop, squat, crouch, crawl,
and twist; to get along with others, understand detailed
instructions, concentrate on and perform detailed tasks; and to
respond/adapt to workplace changes and supervision.[53]   He also
concluded that Plaintiff should not work around heights, uneven
surfaces, or heavy machinery; should have limited exposure to dust,

---

[50]    Tr. 25.

[51]    Tr. 25.

[52]    Tr. 25-27.

[53]    Tr. 27.

fumes, gases, and chemicals; was minimally limited in her ability to balance; and should be precluded from running and climbing stairs, ladders, ropes, and scaffolds.[54]   The ALJ then determined that Plaintiff was not capable of performing her past relevant work as a customer service clerk, answering service operator, or medical coder/biller, because those jobs were all sedentary and semi-skilled in level, which was inconsistent with the ALJ's RFC determination.[55]

The ALJ then evaluated Plaintiff at step five.[56]   Considering her age, education, work experience, and RFC, the ALJ found that Plaintiff could perform jobs, such as an information clerk, file clerk, and unit clerk, that existed in significant numbers in the national economy.[57]

Accordingly, the ALJ found Plaintiff "not disabled" and denied her claim for disability and disability insurance benefits under Title II and Title XVI of the Act.[58]

B.   **Summary of Parties' Arguments**

Plaintiff requests judicial review of the ALJ's decision to deny disability benefits.   In this motion for summary judgment, Plaintiff argues that the ALJ erred in determining Plaintiff's RFC

---

[54]     Tr. 27.

[55]     Tr. 29-30.

[56]     Tr. 30-31.

[57]     Tr. 30.

[58]     Tr. 31.

in two ways: (1) by not properly crediting Plaintiff's complaints of shortness of breath in her physical RFC, and (2) by not placing proper limitations on Plaintiff's mental RFC.

Defendant, on the other hand, contends that the ALJ employed proper legal standards in reviewing the evidence and that the ALJ's decision is supported by substantial evidence of record. Defendant therefore maintains that the ALJ's decision should stand.

## C.   Plaintiff's Complaints of Shortness of Breath

Plaintiff contends that the ALJ failed to accommodate her shortness of breath in his RFC determination. The ALJ devoted considerable discussion to Plaintiff's assertions of shortness of breath.[59]  First, he noted that she testified to having shortness of breath.[60]  Second, he noted that there was mention of shortness of breath in her medical record.[61]  Third, he noted that, in spite of the mention of shortness of breath in her medical record, there was no further evidence in the medical record by way of testing or treatment to determine the extent, if any, the condition had on her ability to function.[62]  Fourth, he noted that Plaintiff has a

---

[59]     Tr. 28-29.

[60]     Tr. 28, 704, 705.

[61]     Tr. 28, 384. Plaintiff complained of arm pain, "some" shortness of breath, and ankle swelling in 2002, three years before the period for which she claims disability. Tr. 384. She also complained of shortness of breath in 2001, four years before the period for which she claims disability. Tr. 395-96. On April 4, 2007, Plaintiff's medical record shows one complaint of shortness of breath, within the period for which she claims disability. Tr. 505.

[62]     Tr. 29.

15

history of smoking which likely impacted her breathing.[63]  Finally, after discussing the activities in which Plaintiff participated regularly, the ALJ noted that her activities indicated that she has "far more physical . . . functional ability than she reported in her application for benefits."[64]

The ALJ provided numerous accommodations in his RFC determination for Plaintiff's shortness of breath.[65]  He precluded her from running and from climbing stairs, ladders, ropes, and scaffolds.[66]  He reduced her walking ability to only four out of eight hours.[67]  He also limited her exposure to dust, fumes, gases and chemicals.[68]

Although Plaintiff argues that the ALJ should have further developed the record with regard to Plaintiff's shortness of breath, Plaintiff's attorney asked Plaintiff no questions regarding her

---

[63]    Tr. 29.  Plaintiff's medical record shows that she had reported having smoked one-and-a-half packs of cigarettes a day for thirty years until April 2005, and that she still smoked daily, although on a much smaller scale. Tr. 414.

[64]    Tr. 29.  In the mid-1990s, Plaintiff was arrested for pawning about $10,000 of broken jewelry from Foley's department store, where she worked at the time.   Although she did not then serve any jail time for the theft, her subsequent probation was revoked when in 2006 she wrote a check with insufficient funds.  She then served jail time from September 2006 through the end of February 2007.  The ALJ felt that this also affected her credibility.  Tr. 712-13.

[65]    Tr. 27.

[66]    Tr. 27.

[67]    Tr. 27.

[68]    Tr. 27.

shortness of breath during her interrogation at the ALJ hearing.[69] Furthermore, it was Plaintiff's responsibility to provide medical evidence showing that she had shortness of breath, the severity of that impairment, and how it affected her functioning.  See C.F.R. §§ 404.1512, 416.912.  The medical record before the court only briefly mentions that she commented on shortness of breath to her physician, yet there is no mention of the severity of this complaint, of how it was treated, or of how it was affecting her life.[70]  In addition, the Commissioner sought a consultative examination with Zimmerman which took place on August 17, 2005; x-rays of Plaintiff's lungs at that time revealed that they were normal.[71]

Plaintiff has shown neither that any shortness of breath was severe, nor that the isolated references to it should have caused the ALJ to order further testing, nor that it impacted her functioning in ways greater than what the ALJ already used to accommodate her impairments in her RFC.  Accordingly, Plaintiff's argument on this ground fails.

**D.   Plaintiff's Mental RFC**

Plaintiff next argues that the ALJ improperly determined her mental RFC because the ALJ found her to have moderate difficulties

---

[69]    Tr. 716-24.

[70]    See Tr. 395-96, 505.

[71]    Tr. 415, 417.

in concentration, persistence, and pace yet failed to include a corresponding limitation in the RFC, other than his limitation on Plaintiff's understanding of, concentration on, and performance of detailed work.

In this case, the ALJ found that Plaintiff had mild restrictions in her activities of daily living; mild difficulties in her social functioning; moderate difficulties with regard to concentration, persistence, and pace; and no episodes of decompensation.[72]  He primarily based his finding on the medical record, which revealed that Plaintiff had been treated for depression in 1986 but that she had not received any treatment for depression during the period for which she alleged disability.[73] Furthermore, the ALJ found no evidence in the record of abnormal thought content or decompensation in behaviors.[74]  He also considered Plaintiff's activities, such as washing dishes, making her bed, going to church, reading the Bible, and visiting with family and friends, and found that these activities "indicate that [Plaintiff] has far more . . . mental functional ability than she reported in her application for benefits."[75]  He concluded that, as part of Plaintiff's RFC, she had "the ability to get along with

---

[72]    Tr. 26.

[73]    Tr. 26, 476.

[74]    Tr. 26.

[75]    Tr. 29.

18

others, understand detailed instructions, concentrate on and perform detailed tasks, and respond/adapt to workplace changes and supervision."[76]

Plaintiff testified that she had no mental problems, no mental conditions, and was not being treated for any mental issues.[77] Even when the ALJ broadly asked, "Is there anything wrong with you mentally, as far as you can determine?", Plaintiff responded, "Not to my knowledge."[78] Likewise, the medical record is empty of evidence with regard to any mental limitations or treatment from the period for which Plaintiff claims disability; to the contrary, there are affirmative statements in the medical record that Plaintiff has no mental limitations.[79]

In this case, the ALJ properly exercised his responsibility as fact finder in weighing the evidence and in choosing to incorporate limitations into this RFC assessment that were supported by the record. "These are precisely the kinds of determinations that the ALJ is best positioned to make." Falco v. Shalala, 27 F.3d 160, 164 (5th Cir. 1994). Therefore, the ALJ's mental RFC determination is supported by substantial evidence.

**E.   <u>Defendant's Motion for Summary Judgment</u>**

---

[76]    Tr. 27.

[77]    Tr. 704-05.

[78]    Tr. 705.

[79]    <u>See, e.g.</u>, Tr. 476.

Defendant asserts in his motion that the ALJ's decision should be affirmed because the ALJ properly determined Plaintiff was never under a disability.

The court recognizes the seriousness of Plaintiff's medical conditions.  However, the court must review the record with an eye toward determining only whether the ALJ's decision is supported by more than a scintilla, but less than a preponderance of evidence. See Carey, 230 F.3d at 135.  The court finds more than a scintilla of evidence in support of the ALJ's decision.  Therefore, the court cannot overturn the decision of the ALJ, who is given the task of weighing the evidence and deciding disputes.  See Chambliss, 269 F.3d 520, 522 (5th Cir. 2001).

For the reasons stated above, the court finds Defendant satisfied his burden.  As a result, the ALJ's decision finding Plaintiff not disabled is supported by substantial record evidence. Defendant's motion for summary judgment is granted.

## IV.  Conclusion

Based on the foregoing, the court **GRANTS** Defendant's Motion for Summary Judgment and **DENIES** Plaintiff's Motion for Summary Judgment.

**SIGNED** in Houston, Texas, this 11th day of December, 2009.

Nancy K. Johnson
United States Magistrate Judge